In the Matter of the Transfer Tax on the Estate of ARCHIBALD
D. RUSSELL, Deceased.

Surrogate's Court, New York County, June, 1922.

Tax — transfer tax — non-resident — when dividends of New York corpora-
tions non-taxable — when amounts due on contracts for sale of real
estate are deemed to be intangible property and not taxable — real
property under lease — method of determining fair market value of real
estate.

Dividends declared on shares of New York corporations prior to the death of the
non-resident owner are not subject to a transfer tax.

Where the executors conveyed certain real estate in accordance with a contract
entered into by their testator the amount due upon the contract, under section
202(9) of the Surrogate's Court Act, must be regarded as intangible property,
and the transfer thereof is not taxable.

While in determining the fair market value of real estate, for the purposes of the
transfer tax, the income produced and the terms of the various leases are factors
to be considered, there must also be taken into account the location of the real
estate, the value of other property in the immediate neighborhood, the nature of
the improvements upon the land, the sales of neighboring real estate during the
year immediately preceding, if any, and other proper elements of value.

Where, therefore, the rule adopted by the appraiser would arbitrarily compel a
deduction from the fair market value of six separate parcels of real estate, sub-
ject to unexpired leases running from one to thirty-four years after the death of
the decedent, where the net return was less than six per cent, his report will
be remitted for proper consideration.

A uniform rule requiring a six per cent income regardless of the location or nature
of the property cannot be adopted, but the fair market value of each parcel must
be separately determined.

CROSS-APPEALS from order fixing tax.

*Geller, Rolston & Blanc,* for executors.

*William W. Wingate,* for state tax commission.

FOLEY, S.  Cross-appeals have been taken by the executors and
the state tax commission from the order fixing tax in this estate.
The decedent was a non-resident of the state of New York.  The
state tax commission concedes the correctness of the executors'
first ground of appeal relating to the taxation of certain dividends
declared prior to the death on shares of New York corporations.  It
likewise concedes the second ground of the executors' appeal as to
the overvaluation of the common stock of the Bronx Refrigerator
Company.  The third ground of appeal of the executors questions
the right of this state to tax the value of two parcels of real estate
which the decedent, before his death, had contracted to sell.  These
premises were subsequently conveyed by the executors in accordance

with the contract of sale. The appeal of the executors upon this ground is sustained. Under *Matter of Boshart,* 188 App. Div. 788, affg. 107 Misc. Rep. 697, and under the terms of subdivision 9 of section 202 of the Surrogate's Court Act (formerly Code Civ. Pro. § 2672), the amount due upon the contract of sale must be regarded as intangible, and not tangible property, and as the decedent was a non-resident, the transfer thereof is not subject to a tax.

The state tax commission appeals from the order fixing tax upon the ground that the appraiser, in his report, depreciated the fair market value of six separate parcels of real estate by reason of the fact that each of said premises was subject to a lease at the time of decedent's death, that said depreciation was erroneous, and that the appraiser reported an improper and inadequate value on each of the premises for the purpose of fixing the transfer tax.

The executors submitted to the appraiser an affidavit of a real estate expert covering each parcel which sets forth the alleged value of the property "unincumbered by any leasehold." The affidavit states the actual amount of rent reserved under the various leases. The actual net return varied from a sum in excess of three per cent to slightly less than six per cent of the value fixed by the expert. The expert then stated that, in his opinion, the rental value of each parcel was a certain sum, which he arbitrarily fixed at six per cent net upon his estimate of the fair market value of the property unincumbered by any lease. He then deducted from the latter estimate, in each case, the present value of the difference between the actual rent and this estimated six per cent net return for the unexpired term of each lease. In this manner he has eliminated over $700,000 from the total of $2,300,000, his estimate of the fair market value of the unincumbered properties, the assessed values of which were $2,100,000. The appeal of the state tax commission must be sustained. This method of valuation used by the expert and adopted by the transfer tax appraiser is unreasonable, arbitrary, theoretical and improper.

Section 220, subdivision 8, of the Tax Law requires that the transfer tax shall be imposed upon " the *clear market value* of the property." Section 230 of the Tax Law provides that the appraiser shall give notice of the time and place of the appraisal of the property and " appraise the same at its *fair* market value." In determining the fair or clear market value of real estate, the income produced by it and the terms of the lease are factors to be considered by the appraiser. Ordinarily the earning power of real estate is an important feature. *People ex rel. W. U. T. Co.* v. *Dolan,* 126 N. Y. 166, 178. But these elements must be considered in connection with its location, the value of other property in the

Surrogate's Court, New York County, June, 1922.    [Vol. 119

immediate neighborhood, the nature of the improvements upon the land, the sales of neighboring real estate during the year immediately preceding, if any (Decedent Estate Law, § 122), and other proper elements of value. The rule sought to be adopted here would compel a deduction from the fair value in each case where the net return was less than six per cent. In effect, therefore, if recognized, it would amount to a guaranty of a six per cent return on the value of all real estate. Ordinarily the fair rental value is the amount agreed to by the landlord and tenant. " In the absence of proof to the contrary, the rents reserved must be presumed to be the fair annual value of the use of the land." *Larkin* v. *Misland*, 100 N. Y. 212. No uniform rule requiring a six per cent income regardless of the location or nature of the property can be adopted, but the fair rental value of each parcel must be separately determined. Justice Laughlin, in *Matter of City of New York (Seventh Avenue)*, 196 App. Div. 451, 456, criticised the method of an expert in calculating that the property should return to the landlord a rental of seven per cent on the valuation. He stated: " Plainly that was very theoretical and of but little probative force save as it was supported presumably by his knowledge of the adaptability of the premises and their availability and the demand therefor and the probability with respect to the continuance thereof." The opinion of the court proceeds to say " that evidence based on general rentals of similar property in the neighborhood would be more cogent evidence of the actual rental value." In *People ex rel. Greenwood* v. *Feitner*, 77 App. Div. 428, the Appellate Division, first department, rejected a valuation based upon a fixed percentage of return, and the court there said that the "relator would not be entitled to escape taxation upon the fair value of his property, even though it were vacant and produced no income." It was the duty of the appraiser to ascertain what each parcel was worth on the market. If the rent reserved was equal to or more than the annual value of the premises, then the property was not incumbered in value by the terms of the lease. If the rent reserved was less than the rental value, the valuation would, no doubt, be depreciated by a long term lease. In each case the length of the unexpired term, the conditions of the lease, the character of the property, its location, the condition of the buildings, and the scale of rents in the neighborhood should be considered in arriving at the fair market value. *Clarkson* v. *Skidmore*, 46 N. Y. 297; *Matter of City of New York (Delancey Street)*, 120 App. Div. 700, 706. In the estate of the decedent here the unexpired leases ran from one year to thirty-four years after the date of death. In the case of an unexpired term of one year it would appear as a matter of law that no deduction should be

allowed from the fair value because of the short period of time remaining, which would hardly extend beyond the usual course of administration of an estate. If arbitrary rules similar to that employed here may be adopted, values may be reduced to a point fixed only by the imagination, ingenuity or the conscience of the expert.

The report is, therefore, remitted to the appraiser for the purpose of taking proper and competent testimony of the fair market value of the real estate involved. For this purpose there should be received in evidence, in each case, the leases of each parcel which have been omitted from the record now before the court. The clerical errors in the report, which appear to be conceded, should likewise be corrected in the supplemental report.

Submit order accordingly.

Ordered accordingly.