Heebebt E. Heeton, S.
This is an application for an order modifying a pro forma taxing order dated December 8, 1961. The modification sought is the reduction of the valuation of decedent’s interests in three partnerships so as to eliminate from consideration the value of foreign realty owned by those partnerships. The application was finally submitted on January 17,1963.
The petition states that after the schedules were filed the attorneys for the estate discovered that the parcels of real estate in question, while belonging to the respective partnerships, were actually in the individual names of the partners. While this may be a mistake of fact, it is an immaterial fact, as the parcels were concededly partnership property. The real basis for this application is that the Surrogate made an error of law, to which conclusion the attorneys did not arrive until they discovered the above fact which really has nothing to do with the question. There is a great deal of conflict and confusion as to whether the Surrogate can correct his pro forma taxing order for an error of law of this kind. (See Matter of Lawrie, 202 Misc. 1060 and cases cited, especially Matter of Ford, 198 Misc. 69.) In the view which I take of the merits of the application it is not necessary to decide the question of power. I conclude that the theory of the order was right.
In inquiring into this question it is necessary to keep in mind the distinction between the property of a partnership, the interest of a partner in specific partnership property, and the interest of a partner in the partnership.
Over the years the legal concept of a partnership as an entity rather than just a status has gained force. While the Uniform Partnership Act (see Partnership Law, §§ 1-74) did not adopt the entity theory it did reflect the trend in that direction whereby the courts, treating a partnership as an entity for some purposes, *912 especially where the Legislature had made it so, had gradually veered away from the old idea that a partner’s only property right was his undivided interest in each partnership asset, in favor of the modern concept that a partner’s only personal property right is his interest in the partnership. (See United States v. A & P Trucking Co., 358 U. S. 121; Blau v. Lehman, 368 U. S. 403; Ruzicka v. Rager, 305 N. Y. 191.)
In Commissioner of Internal Revenue v. Lehman (165 F. 2d 383, 384-385) Judge Learned Hand said: “ The Commissioner’s first point is based upon the strict theory of the common-law that a partnership is no more than a joint ownership of the firm assets by the partners, and that, when a partner sells his interest in the firm, he sells his interest as joint owner of each firm asset * * * However, in equity and in bankruptcy the chancellors long ago imposed modifications upon the rights and liabilities of partners, as the common-law conceived them; and, while the firm never became a jural person, capable of being sued and of suing as such, in the administration of its affairs it did become for most purposes an entity * * #. The practical effect of these interpolations into the common law was to impound firm assets and deprive the individual partners of any control over them except in so far as they were dealing with them on behalf of the firm as a unit. The individual partner’s beneficial interests as a legal joint owner were trimmed down so that he had nothing left save that the firm assets should be devoted to the firm business, that he should share in any profits they produced and in the surplus upon winding up, whether voluntary or by legal process * * *. The Uniform Partnership Law codified this congeries of rights and obligations as it had developed; and made no substantial change, when it declared in so many words that ‘ a partner’s interest in the partnership is his share of the profits and surplus ’ * * * For the reasons we have given, the firm assets so used were encumbered with the trusts or charges which equity had created, which deprived the individual partners of all but vestigial beneficial interests in them.”
In McClennen v. Commissioner of Internal Revenue (131 F. 2d 165, 167-168) the court said: “ In the absence of a controlling agreement in the partnership articles the death of a partner dissolves the partnership. The survivors have the right and duty, with reasonable dispatch, to wind up the partnership affairs, to complete transactions begun but not then finished, to collect the accounts receivable, to pay the firm debts, to convert the remaining firm assets into cash, and to pay in cash *913 to the partners and the legal representative of the deceased partner the net amounts shown by the accounts to be owing to each of them in respect of capital contributions and in respect of their shares of profits and surplus. The representative of a deceased partner does not succeed to any right to specific partnership property. In substance the deceased partner’s interest, to which his representative succeeds, is a chose in action, a right to receive in cash the sum of money shown to be due him upon a liquidation and accounting. These substantive results may be rationalized upon a theory of the partnership ‘ entity ’. Of. Learned Hand, J., in Be Samuels & Lesser, D. C. S. D. N. Y. 1913, 207 F. 195, 198. The same substantive results are reached under the Uniform Partnership Act which, in form at least, proceeds on the aggregate theory. See Crane, The Uniform Partnership Act — A Criticism, 28 Harv. L. Bev. 762 (1915). That act, which is law in Massachusetts, conceives of the partner as a ‘ co-owner with his partners of specific partnership property holding as a tenant in partnership ’; but provides that on the death of a partner ‘ his right in specific partnership property vests in the surviving partner or partners ’. Another enumerated property right of a partner, ‘ his interest in the partnership ’, is described as ‘ his share of the profits and surplus, and the same is personal property ’, regardless of whether the firm holds real estate or personalty or both. See Mass. G-. L. (1932 Ed.) c. 108A, §§ 24, 25 and 26; see also §§ 30, 33, 37, 38(1), 40, 43.
“ This chose in action to which the representative of the deceased partner succeeds, the right to receive payment of a sum of money shown to be due upon a liquidation and accounting, is of course a part of the deceased partner’s wealth, and includable in the decedent’s gross estate for purposes of computing the estate tax by virtue of the comprehensive definition in § 302 of the Bevenue Act of 1926 ’ ’.
There has been much confusion, and some apparent inconsistency, in the courts of this State as to when, to what extent, and for what purposes, a partner’s interest in specific partnership property is to be considered realty or personalty. This question need not confound us, since such interest has been so circumscribed and restricted that it is not worth taxing (it goes to the surviving partners anyway — Partnership Law, § 51, subd. 2, par. [d]) and, whatever may have been the situation in Matter of McKinlay (166 N. Y. S. 1081 [1917]) clearly it is not what is taxed today. The Uniform Partnership Law (§§ 24, 25, 26 — in New York, §§ 50, 51, 52) makes this obvious *914 if it was not before. (Salomon Bros. & Hutzler v. Pedrick, 105 F. Supp. 210; La Russo v. Paladino, 109 N. Y. S. 2d 627, affd. 280 App. Div. [2d Dept.] 988, mot. for lv. to app. den. 281 App. Div. 753.) What is taxed is the partner’s interest in the partnership. In fact, the attorneys for the estate herein recognized that implicitly when they labeled item 4 of Schedule F as “ Interest in Partnerships ”. The McKinlay case has never been cited in any reported New York case.
Lending support to the State Tax Commission’s position herein are Lynch v. Kentucky Tax Comm. (333 S. W. 2d 257 [Ky.]); Wootten v. Oklahoma Tax Comm. (185 Okla. 259) and Matter of Ostler (4 Utah 2d 47).
It might be argued that as some of this real estate is located in Florida, the law of that State would determine what, if any, direct interest a partner would have in it. Florida has not adopted the Uniform Partnership Law. Aside from the fact that the present common law of New York on this subject (which in the absence of proof, of the law of Florida would be assumed to be the law there), is probably the same as under the act, the real question is not what the partner has in a given instance, such as the present one, but what is taxed, and that is a matter of New York law (on which the question of what the partner has, in the average case, is instructive).
So the apparent inconsistency in many cases, and the real inconsistency in a few (of which the McKinlay case may be one), is due largely to a confusion of the different property rights involved, as they have changed over the course of time. This confusion, to which few seem to be immune, is illustrated by the citation by the attorneys for the petitioner (68 0. J. S., Partnership, 513), whereas it seems to this court that page 525 is more in point herein.
There has never been any question, however, about the fact that a partner’s “interest in the partnership” (cf. the word “interest” in § 52 with the word “rights” in § 51), from the time when its separate existence became recognized, is personal property. In this respect section 52 (§ 26 of the uniform act) is declaratory of the common law. (Rossmoore v. Anderson, 1 F. Supp. 35; State v. Elsbury, 63 Nev. 463; Savings & Loan Corp. v. Bear, 155 Va. 312.) Not only is it personal property but it is intangible. (Blodgett v. Silberman, 277 U. S. 1, 11.)
In an illuminating analogy to the history of partnerships, the Court of Appeals in Matter of Jones (172 N. Y. 575) decided in 1902 that a joint stock association had become enough like *915 a corporation so that its shares were personalty for New York estate tax purposes, irrespective of the character of the property represented thereby, whether real or personal. The real estate was local, but any interest of the decedent in real property would have been exempt under the transfer tax statute in force at that time. The Appellate Division, which was reversed, had stated (69 App. Div. 237, 239-240): “ The interest of the associate in the association, or partner in the copartnership property, is not a mere right of action to have the property sold and the proceeds distributed, but the title to all the property vests in the associates or partners as joint tenants.” It also had said, after speaking of a corporation as an artificial person (p. 241): “ When we speak of a joint stock company or copartnership, however, there is no such artificial person created in whom the title to the property can vest”. The Court of Appeals necessarily held that, as to a joint stock association, these statements were not then the law.
Petitioner makes the point that the Ohio real estate has already been taxed there. This is hard to understand, since Ohio has adopted the Uniform Partnership Law and New York would not do the same in the reverse situation. (Allen v. Pfaltz & Bauer Realty Co., 227 App. Div. 666.) However, it is not the issue here. (Blodgett v. Silberman, supra, p. 10.) And double taxation is not necessarily to be avoided by the courts. (State Tax Comm. v. Aldrich, 316 U. S. 174, 181.)
Petitioner argues that inasmuch as Mr. Justice Taft in the Blodgett case indicated at page 11 that the case of Darrow v. Calkins (154 N. Y. 503) is still the law of New York, and inasmuch as the McKinlay case followed the Darrow ease, the McKinlay case must be the law. Undoubtedly the McKinlay case was good law if a partner had an interest such as is described there, and if that was what was taxed. But nowhere in the Barrow case is the nature of a partner’s interest in the partnership discussed. And Mr. Justice Taft indicates clearly on pages 10 and 11 that such interest is personal property.
There remains the constitutional issue. In a very real sense decedent had indirect interests in the foreign realty, which interests are being taxed through the inclusion of the realty in the partnership balance sheets. However, the Blodgett case (supra) holds specifically that this is not unconstitutional.
Petition denied.