NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

MARY ANN LUND, *Petitioner/Appellant*,

*v.*

RICHARD J. LUND, *Respondent/Appellee*.

No. 1 CA-CV 14-0446 FC

FILED 1-12-2016

Appeal from the Superior Court in Maricopa County
No. FC2010-003216
The Honorable Thomas L. LeClaire, Retired Judge
The Honorable Jay R. Adleman, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH
INSTRUCTIONS**

COUNSEL

Horne Slaton & Sannes, PLLC, Scottsdale
By Sandra L. Slaton, Kristin M. Roebuck
*Counsel for Petitioner/Appellant*

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Peter B. Swann and Chief Judge Michael J. Brown joined.

---

**J O N E S**, Judge:

¶1        Mary Ann Lund (Wife) appeals the family court's orders dissolving her marriage to Richard Lund (Husband) and denying her motions for a new trial and to amend the decree.  For the reasons that follow, we affirm in part, reverse in part, and remand with instructions.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Husband and Wife were married in November 1991.  Wife filed a petition for dissolution of marriage in May 2010.  By that time, the parties had accumulated substantial assets in the form of real and personal property, investment and retirement accounts, and fractional ownership interests in various entities involved in real estate development.

¶3        Husband and Wife entered into a settlement agreement in October 2011 that purported to resolve all issues.  However, in August 2012, the family court rejected that agreement, determining it was "so lacking in specificity" regarding the identity, nature, and extent of the parties' assets it did not represent a fair and equitable distribution of the community property.  On its own motion, the court appointed a special master "to determine the value, liabilities, percentage of ownership, and other necessary determinations to establish the community's business interests and assets."

¶4        The parties participated in discovery, hired experts, and, in March 2013, presented evidence and testimony before the special master who thereafter issued written findings and conclusions regarding the nature and extent of the parties' business assets.  The family court then held

---

[1]        "[W]e view the evidence in the light most favorable to supporting the decision below."  *Cooper v. Cooper*, 167 Ariz. 482, 487 (App. 1990) (citing *Johnson v. Johnson*, 131 Ariz. 38, 44 (1981)).

oral argument on the parties' objections to the special master's findings and conclusions and a one-day trial on remaining matters.

¶5 In December 2013, the family court entered a final decree dissolving the marriage and incorporating many of the special master's findings and conclusions. Husband then filed a motion to amend the decree to reflect proper allocation of retirement account funds and proceeds from the sale of the parties' home, as well as maintenance of and payment for their children's health insurance, which the court granted. Wife also filed a motion to amend the decree and for a new trial on the same bases presented within this appeal, which the court denied. Wife timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] -2101(A)(1), and (A)(5)(a).

## DISCUSSION

### I.     Allocation of "Real Property"

¶6 Wife first argues the family court's order addressing "any other real property" was not a true "division" of the property and violated A.R.S. § 25-318. The order states:

> Any other real property owned by the parties shall be held equally, and titled as determined by the parties by mutual agreement, and held or sold as determined by the parties upon mutual agreement.

We review the disposition of property for an abuse of discretion, which may occur when the family court commits an error of law. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005) (citing *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23 (App. 2004)).

¶7 As an initial matter, the parties agree the above-referenced provision is intended to address four investment properties held "via layers of limited liability companies that are [owned, in part, by] community entities."[3] Because the community's fractional ownership interest is not in

---

[2]     Absent material changes from the relevant date, we cite a statute's current version.

[3]     These interests include a 4.85% interest in a residential condominium project in Flagstaff known as Biltmore Pines valued at $282,000, an 8.3% interest in an industrial condominium project in San Diego, California

title to the property, but in the entities holding that title, the decree is in error in referring to these assets as "real property" interests.[4] *See Burkett v. Mott by Maricopa Cnty. Pub. Fiduciary*, 152 Ariz. 476, 478 (App. 1986) (including documents of title and securities within the definition of "incorporeal personal property"); *Ariz. Tractor Co. v. Ariz. State Tax Comm'n*, 115 Ariz. 602, 604 (App. 1977) (holding a partnership interest is intangible personal property) (citing *Blodgett v. Silberman*, 277 U.S. 1, 11 (1928), and *In re Finkelstein's Estate*, 245 N.Y.S.2d 225, 229 (1963)).

¶8        Addressing the merits of Wife's argument,[5] we look to A.R.S. § 25-318(A), which provides the family court "[i]n a proceeding for dissolution of the marriage . . . *shall* . . . divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind." (Emphasis added.)  *See also Martin v. Martin*, 156 Ariz. 452, 456 (1988) ("[T]he court *must* equitably divide the community, joint tenancy and other property held in common.") (emphasis added).  Our supreme court has also acknowledged that physical assets may not always be readily divisible by the court or available for distribution.  *Id.* at 458.  That being the case, Arizona law requires an equitable, rather than equal, division, and the

---

known as Otay Mesa valued at $90,176, a 2.6% interest in undeveloped land in Flagstaff known as Butler and Fourth valued at $36,400, and a 50% interest in undeveloped land in Peeples Valley known as Envoy/Peeples valued at $35,000.

4        For this reason, we find no merit in Wife's argument, premised upon the purported violation of A.R.S. § 25-318(F) (requiring the decree to "specifically describe by legal description any real property affected"), that the decree is unenforceable for vagueness.

5        Husband urges us to reject this argument based upon the doctrines of waiver or invited error because the family court's order reflected an agreement of the parties to an equal-share allocation of the investment properties.  While we share Husband's concern that Wife does not challenge the nearly identical order "that the Riverside property [held in an entity of which the community owns a 16% interest] be split equally and retained by the parties by mutual agreement and disposed of by mutual agreement of the parties," in our discretion, we address the merits of Wife's contention. *See Stop Exploiting Taxpayers v. Jones*, 211 Ariz. 576, 580 n.3, ¶ 17 (App. 2005) (citing *Larsen v. Nissan Motor Corp.*, 194 Ariz. 142, 147, ¶ 12 (App. 1998)).

family court has broad discretion in allocating community property to achieve equity and "accommodate the necessities of the situation." *Id.*

**¶9** Although Wife would no doubt prefer a cash payout instead of an award of a fractional interest in undeveloped land and consortium-owned commercial investment properties located across several states, the family court was not required to *sever* her interest, but simply delineate it *separately* from Husband's. *Cf. Collier v. Collier*, 73 Ariz. 405, 414 (1952) (authorizing spouse to pursue a partition action to sever separate interests in joint property "which interests . . . are identical and equal"). In doing so, a court may award the property to one spouse and award an offsetting sum, or impose a lien, in favor of the other spouse representing his share of the value of the property. *See* A.R.S. § 25-318(E)(1); *Martin*, 156 Ariz. at 457; *Spector v. Spector*, 94 Ariz. 175, 179, 186 (1963) (affirming, as modified, the family court's order awarding community property to husband and imposing a lien in favor of wife where the forced sale of non-liquid assets would realize less than their actual value). Moreover, an equitable division may be accomplished by ordering the ownership interest be changed from a community asset to a tenancy in common. *Cf.* A.R.S. § 25-318(D) (stating any joint property not accounted for within the decree "shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest").

**¶10** An equitable division may also be accomplished at a more fundamental level by dividing the parties' membership shares in entities holding title to the real property. Under these circumstances, each party retains an interest in the asset but holds a separately discernible estate or interest. *See Collier*, 73 Ariz. at 411-12 ("The fact that the co-tenants happen to be husband and wife has no bearing upon the nature or quality of their ownership just as their marriage is of no consequence when considering the nature and quality of the ownership of the separate property of each."). Given the nature of the assets at issue here, it is apparent the family court intended a division of the parties' membership interests when it ordered the assets be "held equally."

**¶11** Wife's citation to *Walston v. Walston*, 971 S.W.2d 687 (Tex. App. 1998), is unpersuasive. In *Walston*, the Texas Court of Appeals considered whether personal property "subject to partition in kind" was properly allocated when each party was granted an undivided fifty percent share, and the record did "not reflect any reason why the household furnishings or the other items in the . . . community estate cannot be split by the trial court between the parties." *Id.* at 692-93. In contrast, the property at issue here — the community's fractional interests in entities

holding real estate investments — is not necessarily "subject to partition in kind" in the same manner as household furnishings. Nor does dividing the parties' fractional membership interest in an investment project present the same obvious practical problems that awarding them, for example, an undivided fifty percent interest in a refrigerator would. Moreover, the record suggests the court's decision to award the parties equal rights in the property was appropriate: (1) the parties' ownership interest was held through layers of other entities; (2) the fractional interest the parties' exercise might limit their ability to force a sale or obtain an appropriate value from their sale; (3) the division of the parties' interest could easily be accomplished through amendment of the entities' operating agreements; and (4) where they share equally in the existing investments, neither party would obtain a windfall or suffer a shortfall from changes in market conditions that the other would not.

¶12         The family court was required to do no more than divide the parties' ownership interest in the entities holding the investment properties between them and did not abuse its discretion in granting the parties equal shares in the real estate investment interests at issue here. We therefore affirm the decision of the family court with respect to this issue and remand with instructions to enter an order effecting the division of the community's interests consistent with ¶ 7, *supra*.

## II.        Waste of Community Assets[6]

¶13         Wife next argues the family court erred in rejecting the special master's determination that Husband spent funds drawn from a community business on "personal expenses" without making a specific determination that the finding was clearly erroneous. On this subject, the special master stated:

---

[6]        "Waste" is traditionally defined as harm to real property by a tenant to the detriment of an heir, reversioner, or remainderman. Black's Law Dictionary (10th ed. 2014). This Court has used the term to describe excessive or abnormal expenditures from community property that must be accounted for when making an equitable distribution. *See, e.g., Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 6 (App. 1998) (citing A.R.S. § 25-318(A) (1991) (recodified as A.R.S. § 25-318(C)), *Martin*, 156 Ariz. at 458, and *Hrudka v. Hrudka*, 186 Ariz. 84, 93 (App. 1995), *superseded in part by statute on other grounds as recognized in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014)).

[S]ums taken by [Husband] for personal expenses from the Biltmore Holdings entity should be considered by the court as potential waste. . . . [Husband] has not explained how these monies were for community purposes, either personal community expenses of the family or for business expenses of the Lund community business. . . . The total for the money taken by Husband from Biltmore Holdings for the years 2008 through 2012 is $254,821. The Master determines that Wife is entitled to a credit for half of this amount . . . .

The special master also recommended Husband be permitted to clarify "why the cash transfers . . . should not be considered as personal expenses of [Husband]" and that any credit to Wife be "subject to an explanation offered at trial [by Husband] about the cash transfers in 2011 and 2012." The family court ultimately denied Wife's claim for waste after determining she had presented insufficient evidence to establish a *prima facie* case, concluding "[Wife]'s evidence amounts to nothing more than conjecture, innuendo, and assumptions."

¶14 The family court may adopt, modify, or reject in whole or in part the report or recommendations of a special master, Ariz. R. Fam. L.P. 72(G), but "shall not reverse the special master's findings of fact unless clearly erroneous," Ariz. R. Fam. L.P. 72(H). A finding can be clearly erroneous when the reviewing court — here, the family court — "on the entire evidence, 'is left with definite and firm conviction that a mistake has been committed.'" *Civil Rights Div. of Ariz. Dep't of Law v. Amphitheater Unified Sch. Dist. No. 10*, 140 Ariz. 83, 86 (App. 1983) (interpreting identical language in Arizona Rule of Civil Procedure 52(a)) (quoting *Merryweather v. Pendleton*, 91 Ariz. 334, 338 (1962)). Conversely, "[a] finding of fact cannot be 'clearly erroneous' if there is substantial evidence to support it." *Visco v. Universal Refuse Removal Co.*, 11 Ariz. App. 73, 75 (1969) (citing *Bohmfalk v. Vaughan*, 89 Ariz. 33, 38 (1960), and *Reliable Elec. Co. v. Clinton Campbell Contractor, Inc.*, 10 Ariz. App. 371, 373 (1969)).

¶15 Although the family court did not make an express finding that the special master's suggestion waste may have occurred was clearly erroneous, we assume the court knew the law, applied it correctly, and made all findings necessary to support its order. *Fuentes*, 209 Ariz. at 58, ¶ 32 (quoting *State v. Trostle*, 191 Ariz. 4, 22 (1997)); *Chudzinski v. Chudzinski*, 26 Ariz. App. 130, 133 (1976) (citing *Silva v. De Mund*, 81 Ariz. 47, 51 (1956)). Wife's sole evidence on the issue was a spreadsheet she prepared summarizing monies she "believed" Husband spent entertaining a girlfriend during their marriage; she did not offer any evidence supporting

her assertion that those expenditures, totaling nearly $300,000, were actually spent for the benefit of the girlfriend. Conjecture, innuendo, and assumptions do not constitute substantial evidence to support a finding. *See City of Tucson v. Citizens Utils. Water Co.*, 17 Ariz. App. 477, 481 (App. 1972) ("Mere speculation and arbitrary conclusions are not substantial evidence and cannot be determinative."); *see also Ariz. Corp. Comm'n v. Citizens Utils. Co.*, 120 Ariz. 184, 190 (App. 1978) (concluding speculative testimony of expert was not substantial evidence sufficient to support Commission's order setting rate of return). And, the court's explicit conclusion that waste did not occur indicates Wife's evidence was not substantial.

¶16 Thus, the court was within its authority to reject the special master's unsubstantiated conclusion that Husband may have committed waste. And because Wife did not first establish the expenditures were abnormal or excessive, the court correctly concluded Husband was not required to establish where the funds were spent. *See Gutierrez*, 193 Ariz. at 346 ("We hold that the spouse alleging abnormal or excessive expenditures by the other spouse has the burden of making a *prima facie* showing of waste.").

### III. Prima Facie Evidence of Waste

¶17 Wife argues the family court erred by sustaining Husband's objection to her claims for waste she alleges to have occurred prior to service of the dissolution petition on the basis that "the marital community was [then] intact." We review the court's determination regarding the sufficiency of the evidence to establish a *prima facie* case of waste for an abuse of discretion. *See Kline v. Kline*, 221 Ariz. 564, 573, ¶ 35 (App. 2009) (citing *Cavanagh v. Ohio Farmers Ins.*, 20 Ariz. App. 38, 44 (1973)). Generally, "[a] court abuses its discretion when the record fails to provide substantial support for its decision or the court commits an error of law in reaching the decision." *State ex rel. Montgomery v. Karp*, 236 Ariz. 120, 123, ¶ 7 (App. 2014) (citing *Files v. Bernal*, 200 Ariz. 64, 65, ¶ 2 (App. 2001)).

¶18 Wife correctly asserts that misuse of community assets may constitute waste regardless of whether the expenditures were made during the marriage or following service of the dissolution petition. *See Martin*, 156 Ariz. at 455-56 (1988) (holding the family court may compensate one spouse for the misuse of community property by the other during the marriage to offset the value of the lost property); *Gutierrez*, 193 Ariz. at 346-47, ¶¶ 3, 8 (affirming finding of waste based upon excessive and abnormal expenditures during marriage). Contrary to Wife's assertion however,

although the family court considered the date of service of the dissolution petition in establishing the appropriate date for valuation of the community business, this factor was not the basis for sustaining Husband's objection to Wife's claim of waste for pre-petition expenditures.

**¶19** Rather, the family court specifically and correctly noted that, to substantiate a claim for waste, Wife was required to make a *prima facie* showing that expenditures were abnormal or excessive. *See* A.R.S. § 25-318(C); *Guitierrez*, 193 Ariz. at 346, ¶ 7. Yet, while acknowledging Husband received funds from the community business, neither the special master nor the court found his expenditures were abnormal or excessive. To the contrary, the court concluded, based upon the "historical manner in which the parties moved money" and testimony indicating both parties used community funds to maintain community assets, the transfers were *not* abnormal.[7]

**¶20** The family court correctly applied the law, and its conclusion that Wife failed to establish a *prima facie* case of waste for any portion of the asserted time period is supported by the record. Therefore, we find no error.

### IV. Wife's Expert Witness

**¶21** Wife also contends the family court erred by precluding her expert witness from testifying about spousal maintenance at trial. We review the family court's decision to preclude expert testimony for an abuse of discretion. *See Baroldy v. Ortho Pharm. Corp.*, 157 Ariz. 574, 588 (App. 1988) (citing *Englehart v. Jeep Corp.*, 122 Ariz. 256, 258 (1979)). We will uphold the court's ruling if legally correct for any reason supported by the record. *State v. Childress*, 222 Ariz. 334, 338, ¶ 9 (App. 2009) (citing *State v. Canez*, 202 Ariz. 133, 151, ¶ 51 (2002)).

**¶22** The record reveals Wife disclosed a forensic accountant to testify "as a financial consultant as to the community assets, property

---

[7] The special master further recognized that, by setting the business valuation date as the date of service of the dissolution petition, "Wife is not penalized for business decisions Husband made after he knew he was going to be divorced." The family court apparently agreed and, on this basis, rightfully rejected Wife's argument she should receive half the value of the community business *and* half of the funds he withdrew from the business after the date of valuation, which would presumably have depleted its value.

values, waste, and Husband's income." At trial, Wife attempted to call the expert to testify as to how Husband's diversion of assets from the community business should affect the calculation of an award of spousal maintenance to Wife. Husband's counsel objected that this testimony exceeded the scope of Wife's expert disclosure. In response, Wife argued the expert's February 2013 report, containing her analysis of the community's interest in various business entities, and her "entire working file" provided sufficient notice as to the subject matter of her anticipated testimony.

**¶23** The family court expressed concern regarding the lack of proper disclosure, but also determined the conclusions Wife sought from the expert — described by Wife's attorney as "what she thinks [Husband] was really earning as far as would not show up on his affidavit of financial information and . . . the monies that he took that should be deemed relevant for these purposes" — were "already contained in the special master's report . . . [s]o I don't need testimony as to that." Indeed, the expert's opinions regarding the nature and extent of the distributions Husband received from the community business, characterized by Wife throughout as "waste," are well-established within both the expert's reports, which were admitted into evidence, and the special master's report. Thus, although we reject Husband's argument that Wife was required to specifically disclose her financial consultant as a "spousal maintenance expert," we find the court acted within its discretion in excluding unnecessary cumulative evidence.[8] *See* Ariz. R. Evid. 403 (authorizing the exclusion of unnecessary cumulative evidence); *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 526-27, ¶ 23 (App. 2014) (explaining a trial court acts within its discretion to prevent the presentation of cumulative evidence where the opinions are "established" and "substantially the same").

**¶24** Wife also argues the family court erred in excluding her expert's testimony and working file as rebuttal to Husband's testimony regarding his understanding of the contents of the expert's reports and the nature of the expert's testimony before the special master. We disagree. First, the court admitted the expert's reports into evidence, but Wife never moved to admit the additional 50,000 pages she claimed comprised the expert's working file. Wife cannot now rightfully complain the court did not admit evidence that she did not offer. *See State v. Logan*, 200 Ariz. 564,

---

[8]     Because the cumulative nature of the proffered expert testimony supported its preclusion, we need not address Wife's argument that the family court erred in precluding the expert as unqualified pursuant to Arizona Rule of Evidence 702.

566, ¶ 11 (2001) (noting a party may not inject error into the record and then profit from it on appeal) (quoting *State v. Tassler*, 159 Ariz. 183, 185 (App. 1988)). Second, the family court was clear that the parties' testimony regarding the expert's conclusions was relevant only to the determination of whether Wife took an unreasonable position in the litigation warranting an award of attorneys' fees — a topic upon which the expert's rebuttal would have been irrelevant.

## V.    Spousal Maintenance

**¶25**        Wife argues the family court abused its discretion in awarding her spousal maintenance of only $1,000 per month for four years. Wife does not contest the factual findings underlying the family court's award, arguing instead the court did not properly weigh the factors set forth in A.R.S. § 25-319(B).  We do not reweigh evidence on appeal, *Reeck v. Mendoza*, 232 Ariz. 299, 303, ¶ 14 (App. 2013), and will affirm if there is any reasonable evidence to support the family court's order.  *Gutierrez*, 193 Ariz. at 348, ¶ 14.

**¶26**        Here, the family court commented on each of the factors listed in A.R.S. § 25-319(B).  Although many of the factors weighed in favor of an award of maintenance, the court also found:

> Both parties are receiving substantial assets following the dissolution of the marriage.  It appears that each party will have in excess of $1,000,000.00 of assets distributed to him/her.  Moreover, [Husband] notes that his stream of income has been diminished by the economic decline in the real estate market since 2007 so that he has not completed a deal in the last six (6) years.  [Husband] also notes that he has lost the opportunity to put into place real estate deals and that the real estate deals of the type that [Husband] has previously closed take two (2) to three (3) years to come to fruition. [Husband] testified, without challenge and without rebuttal that he has no current deals pending and no business deals on the horizon.  Therefore, currently [Husband] has no income except for the existing income that comes from any of the business deals that were distributed to the parties pursuant to the findings and recommendations of the Special Law Master as adopted by this Court. Moreover, [Husband]'s unrebutted testimony supports a determination, which the Court now makes, that [Husband] has no additional income in the foreseeable future.

> Additionally, the Court has ordered distribution of significant cash and assets to [Wife] during the pendency of this litigation. Therefore, after the distribution of assets as contemplated by this Decree, the parties financial standing will be relatively equal . . . .

¶27 Here, the record reflects both parties received substantial property in relatively equal amounts following dissolution of their marriage, Wife received significant cash distributions throughout the proceedings, and Husband's real estate business has declined dramatically. Under these circumstances, we cannot say the family court abused its discretion in awarding Wife less maintenance than requested. *See Holby v. Holby*, 131 Ariz. 113, 114 (App. 1981) (declining to disturb award of spousal maintenance where wife had no work skills and was unable to meet necessary monthly expenses through income and spousal maintenance awarded).

¶28 Wife further contends the family court erred in precluding additional evidence of "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common," pursuant to A.R.S. § 25-319(B)(11). She asserts the court had "an absolute duty to consider any and all of those claims anew at trial." Although Wife offers no legal support for the imposition of such a duty, and we find none, we have already determined Wife had adequate opportunity to present evidence on the issue of waste at trial, and there is reasonable evidence to support the court's conclusions in this regard. *See supra* Parts II and III. Moreover, the record reflects the court was aware of, considered, and rejected Wife's claim that Husband's purportedly wasteful distributions from the community business should be attributed to him as income for purposes of calculating spousal maintenance, notwithstanding the special master's comments. We find no error.

## VI. Setoff From Prior Order

¶29 Finally, Wife argues the family court abused its discretion in denying her motion for a new trial and to amend the judgment to reflect a setoff for $90,000 the court previously ordered Husband to pay to Wife. The sums Wife seeks represent her share of distributions from the Biltmore Pines investment property. She asserts the court's denial was in error because it concluded "[t]hose funds were in fact transferred." We review the denial of a post-trial motion for an abuse of discretion. *Hutcherson v. City of Phx.*, 192 Ariz. 51, 53, ¶ 12 (1998). A court abuses its discretion where

its decision is based upon a clearly erroneous finding of fact. *See Shoen v. Shoen*, 167 Ariz. 58, 62 (App. 1990).

¶30 Wife noted within her pretrial statement that, although Husband had paid $90,000 as previously ordered, he had done so with community funds, thereby paying her with money half of which was already hers. Wife asserted he therefore still owed her $45,000 for the obligation plus $3,295.93 in attorneys' fees and costs awarded in the course of enforcement proceedings. Wife also alleged Husband owed her an additional $10,000 distribution from Biltmore Pines. In total, it appears Wife asserts an outstanding obligation owed her by Husband of $58,295.93; indeed, Husband acknowledged he owed Wife at least $50,000[9] in his pretrial statement, prior pleadings, and trial testimony.

¶31 Based upon this undisputed testimony, the family court erred in finding Husband had fully satisfied this obligation to Wife and abused its discretion in denying Wife's post-trial motions by omitting this offset from the decree. We therefore reverse the court's finding that the $90,000 obligation was satisfied and remand with instructions to calculate and award Wife an amount of money in satisfaction of those sums which remain unpaid.

**CONCLUSION**

¶32 Based upon the foregoing, we reverse that portion of the decree pertaining to the $90,000 judgment previously entered and remand to the family court to amend the decree consistent with ¶¶ 7, 12, 31, *supra*. We leave to the discretion of the family court whether additional evidence or testimony is required. We affirm the dissolution decree in all other respects.

¶33 Wife requests an award of attorneys' fees and costs incurred on appeal, asserting a disparity of income between the parties renders such an award appropriate under A.R.S. § 25-324(A). In our discretion, and based upon the findings of the family court as to the parties' respective

---

[9] The record does not demonstrate how Husband reached this figure, but the parties agree the obligation arises from Husband's payment of $90,000 to Wife from an account owned by the community and in which Wife already owned a 50% interest.

financial position, we decline that request. However, as the prevailing party, Wife is entitled to her costs on appeal upon compliance with ARCAP 21(b).



Ruth A. Willingham · Clerk of the Court
F I L E D : ama